1  LAW OFFICES OF SANFORD M. PASSMAN
   Sanford M. Passman, Esq., SBN 77701
2  6303 Wilshire Boulevard, Suite 207
3  Los Angeles, CA 90048
   Phone: (323) 852-1883
4  Facsimile: (323) 852-1899
   sandypassman@ca.rr.com
5
   NATANZI LAW GROUP, INC.
6  O. David Natanzi, Esq., SBN 199983
7  9911 West Pico Boulevard, Suite 1010
   Los Angeles, California 90035
8  Telephone: (310) 201-4999
   Facsimile:  (310) 201-5999
9  david@nlginc.com

10
   Attorneys for Plaintiff
11 ASHLEY NIKOLE STEELE

12
                    UNITED STATES DISTRICT COURT
13
                  SOUTHERN DISCRICT OF CALIFORNIA
14

15
16 ASHLEY NIKOLE STEELE, an Individual;      CASE NO.:  **'12CV1012 DMS WMC**

17          Plaintiff,
                                             **PLAINTIFF'S COMPLAINT FOR
18 v.                                        DAMAGES; DEMAND FOR JURY
                                             TRIAL**
19 CITY OF SAN DIEGO, a Governmental Agency;
20 SAN DIEGO POLICE DEPARTMENT, a            1. **VIOLATION OF CIVIL RIGHTS
   Governmental Agency; SAN DIEGO POLICE        (42 U.S.C. 1983)**
21 OFFICER ANTHONY AREVALOS, an Individual;  2. **NEGLIGENT SUPERVISION,
   SAN DIEGO POLICE OFFICER SERGEANT            HIRING AND RETENTION**
22 KEVIN FRIEDMAN, an Individual; and DOES 1 3. **ASSAULT AND BATTERY**
   through 20, Inclusive,                    4. **UNLAWFUL ARREST AND
23                                              DETENTION;  AND**
24          Defendants.                      5. **INTENTIONAL INFLICTION OF
                                                EMOTIONAL DISTRESS**
25

26

27

28

Plaintiff ASHLEY NIKOLE STEELE (hereinafter referred to as "Plaintiff") by and through her attorneys, respectfully alleges as follows:

1.      This is a Civil Rights lawsuit brought by Plaintiff, a victim of police misconduct, false arrest, false detention, assault and battery and inadequate training, hiring, retention and discipline of the subject police officers as part of a custom and practice that has long been perpetrated by the individual Defendants and with the actual or constructive knowledge of the government entities named herein.  Compensatory and punitive damages are sought against Defendants involved in the deprivation of Plaintiff's civil rights as guaranteed by the laws of both the United States and the State of California.

## THE PARTIES

2.      Plaintiff ASHLEY NIKOLE STEELE, a 24 year-old Caucasian female, was at relevant times residing in the City and County of San Diego and a resident of the State of California.

3.      Defendant CITY OF SAN DIEGO (hereinafter referred to as "CITY") is a governmental body within the County of San Diego and conducts its business in the State of California.

4.      Defendant SAN DIEGO POLICE DEPARTMENT (hereinafter referred to as "SDPD) is a law enforcement agency located in the City of San Diego, State of California, with the power, authority and/or responsibility to hire, retain, train, supervise, discipline and/or terminated its individual officers.

5.      Defendant San Diego Police Department Officer ANTHONY AREVALOS (hereinafter referred to as "AREVALOS")  (Identification # 5012) was, at all relevant times, a law enforcement officer employed, trained, supervised, hired and negligently retained by the CITY and SDPD.

6.      Defendant San Diego Police Department Officer Sergeant KEVIN FRIEDMAN (hereinafter referred to as "FRIEDMAN") was, at all relevant times, a law enforcement officer

2

employed, trained, supervised, hired and negligently retained (without discipline) by the CITY and SDPD. At all relevant times, FRIEDMAN was AREVALOS was supervisor.

7.      Plaintiff is informed and believes that each of the entities identified herein conduct their business in the State of California. The individual Defendants were employees of one or more of the Governmental entities identified herein, acting under color of law, conspiratorially and in concert with each other and within the course and scope of their employment and/or agency, and with the knowledge, consent and permission of each other and their employers and were further acting under the color of statutes, ordinances, regulations, policies, customs and usages of the City of San Diego and/or San Diego Police Department and were, pursuant to the policies, customs and practices of the aforementioned entities.

8.      Plaintiff is ignorant of the true names and capacities of the Defendants sued herein as Does 1 through 20, inclusive, and therefore sues these Defendants by such fictitious names pursuant to CCP §474, and alleges that each of said fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and that the damages as herein alleged were proximately caused by such Defendants. This Complaint will be amended to allege their true names and capacities when the same has been ascertained. As used in this pleading the term "Defendants" includes Does 1 through 20, inclusive. Upon information and belief, Plaintiff alleges that Defendants DOES 1 through 20 contributed to or are each individually and/or collectively responsible in some manner for the incidents described herein. Each and every Defendant, including DOES 1 through 20, acted together in furtherance of the wrongs perpetrated, as described herein, against Plaintiff, were co-conspirators, and/or acted on behalf of each other to commit wrongs alleged herein.

## JURISDICTION AND VENUE

9.      This action arises under Title 42 U.S. Code Section 1983 and the United States Constitution. The jurisdiction of this Court is invoked under 28 U.S. Code Sections 1331 and 1342.

PLAINTIFF'S COMPLAINT FOR DAMAGES

10.     Venue is proper in the Southern District of California because all of the facts and omissions complained of occurred within the State of California and particularly within the City of San Diego.

## FACTS COMMON TO ALL CLAIMS

11.     Plaintiff is a 24 year old attractive Caucasian female who at all relevant times was a resident of the City of San Diego, County of San Diego.

12.     On the evening of April 29, 2010, Plaintiff along with two of her friends, Rinata Dominguez and Avani Shaw, left Plaintiff's residence around 9:30 p.m. to attend a work party that was being held at Fluxx, a club, located near 4th Street and Market in the Gaslamp District of San Diego.  Plaintiff was the designated driver for the evening and had told her friends she was not going to drink much, if at all, and was in fact reluctant to go out until her friends convinced her to go with them.  On the way to Fluxx, all three woman stopped at a McDonald's restaurant where Plaintiff ordered two cheeseburgers and a Coke which she completely consumed.

13.     Plaintiff and her friends arrived at Fluxx at approximately 10:10 p.m.  However, they were not allowed to be seated since the rest of their party had not yet arrived.  The three waited outside Fluxx for a few minutes and since no one had yet showed up, they decided to go across the street to the Hard Rock café while they waited for their party to show up.

14.     Shortly after arriving at Hard Rock at around 10:30 p.m,, someone bought Plaintiff a Red-bull and Vodka cocktail.  Plaintiff drank half of her drink since she was driving and because her friends had already consumed too many drinks and would not be any condition to drive later.  After they finished their drinks, Plaintiff and her friends left Hard Rock at approximately 10:40 p.m. and went back to Fluxx at which time the rest of their party had arrived and been already been seated.

15.     Plaintiff, Ms. Shaw and Ms. Dominguez joined the rest of their party and stayed at Fluxx until approximately 11:30 p.m. at which time one of the security guards asked Ms. Shaw to leave because she was acting unruly and inappropriately.  While at Fluxx, Plaintiff only had one glass

4

of champagne the whole time and she only drank ¾ of her drink shortly before leaving at approximately 11:40 p.m.

16.     As they were leaving Fluxx, Plaintiff noticed three uniformed San Diego Police Officers standing next to the valet station that provided parking for Fluxx patrons as well as other businesses in the area.  All three officers were standing within 15 yards of the entry to Fluxx and had a clear view of Plaintiff and her friends as they exited the club.

17.     Plaintiff handed her claim ticket to the valet and since her car was parked just across the street, she took her keys from the valet and started to cross the street to where her vehicle was parked.  As they were walking crossing the, Ms. Shaw tripped and fell down to the pavement.  After helping her friend get up, Plaintiff looked over at the police officers and heard one of them comment something about Ms. Shaw's dress and that he could see her underwear. The officer who made that comment was Defendant AREVALOS.  Plaintiff kept walking to her vehicle, placed Ms. Shaw in the back seat and Ms. Dominguez sat in the front passenger seat.

18.     As soon as Plaintiff pulled out to drive away, she noticed one of the police officers (later identified as Defendant AREVALOS) get into his squad car and he started following Plaintiff. Plaintiff was well aware she was being followed by Defendant AREVALOS and paid careful attention not to break any traffic laws.  Defendant AREVALOS followed directly behind Plaintiff's vehicle for a few blocks when he suddenly and without any legal justification turned on the sirens and lights on his vehicle.

19.     Plaintiff who was travelling in the middle lane on 11th street turned on her signal light, slowly moved to the right lane and as she approached "A" Avenue she put on her signal light to make a right turn unto "A" Avenue.  After she entered "A" Avenue, Plaintiff drove for a few hundred feet until she approached a McDonald's restaurant and stopped there because it was well lit and appeared safe.

5

20.    Defendant AREVALOS approached the driver's window and asked for Plaintiff's license and registration and also instructed Plaintiff to take her keys out of the ignition and place them on the dashboard. Plaintiff asked why she was pulled over and AREVALOS told her she had allegedly cut him off. [1] Plaintiff is informed and believes she was pulled over by Defendant AREVALOS at approximately 12:05 a.m. or roughly twenty minutes after they left Fluxx.

21.    AREVALOS spent the next ten minutes talking to Plaintiff and questioning her about what she and her friends had been doing that evening. Plaintiff explained they had just attended a work related function at Fluxx and were on their way home. While talking with Plaintiff, AREVALOS noticed Ms. Shaw was passed out in the back seat and commented that her dress was inappropriate and that he could see her underwear.

22.    After reviewing Plaintiff's paperwork, AREVALOS told Plaintiff to exit the vehicle because he wanted her to perform a Field Sobriety Test ("FST") because he smelled alcohol in the vehicle. Plaintiff explained she was the designated driver that evening and had consumed less than two drinks that entire evening. Nonetheless, AREVALOS ordered Plaintiff to undergo the FST.

23.    Plaintiff exited her vehicle and before the FST began, she asked AREVALOS if she could take off her 6 ½ inch heels because it would be difficult for her to perform the FST over the cobblestone pavement where the test was going to be conducted. AREVALOS refused Plaintiff's request and told her she had to keep them on because she looked good wearing them. Throughout the FST, AREVALOS repeatedly asked Plaintiff inappropriate and personal questions and intimated Plaintiff probably worked at a strip bar because of the shoes she was wearing. Despite taking the test

---

[1] Arevalos' excuse for stopping Plaintiff appears illogical because he was travelling directly behind Plaintiff for several blocks when he stopped her so there was no time or place when she could have cut him off. Furthermore, Arevalos' arrest report is replete with several inconsistencies and fails to include very key facts and contains erroneous statements including listing two other reasons why he stopped Plaintiff. His report indicates he stopped Plaintiff because she was "violating the right of way" and because she made "an unsafe turn from the wrong lane position and without signaling."

PLAINTIFF'S COMPLAINT FOR DAMAGES

while wearing 6 ½ inch heels and having to endure AREVALOS' rude comments, Plaintiff passed the FST. AREVALOS even acknowledged this and showed Plaintiff his clipboard which documented Plaintiff's passing scores. Nonetheless, AREVALOS refused to believe Plaintiff was not inebriated and told her he thought she was more intoxicated than she appeared. At this point he told Plaintiff he was going to take her to the police station.

24.    Plaintiff was shocked AREVALOS wanted to detain her and take her to the police station. However, before he cuffed her, Plaintiff asked if she could take a breathalyzer test right there. AREVALOS asked if Plaintiff really wanted to take a test and Plaintiff was adamant that she in fact wanted to. AREVALOS went to the trunk of his squad car and pulled out a portable, hand held breathalyzer. Plaintiff blew into the device and it registered a BAC of .06. AREVALOS thought the score was wrong and had Plaintiff blow into the device and Plaintiff again blew a BAC of .06.

25.    Despite Plaintiff's low BAC scores (.06 on both tests), AREVALOS refused to acknowledge Plaintiff was not intoxicated and kept stating he believed she was more intoxicated than she appeared despite what the results of the FST and breathalyzer indicated. Despite all this objective evidence that should have resulted in her release, AREVALOS proceeded to place Plaintiff in handcuffs and then subjected her to a disgusting display of police misconduct which included acts demeaning acts carried out by AREVALOS against Plaintiff's person that were sexually lewd, despicable and loathsome. [2]

26.    While handcuffed, AREVALOS placed Plaintiff against the side of his squad car while he performed a full pat down of Plaintiff's person. AREVALOS was standing only a few inches behind Plaintiff and she could feel his breath on her neck throughout the pat down. The pat down

---

[2]  On the night of the incident Plaintiff was wearing a form-fitting, black mini-dress with spaghetti straps with a hemline that ended well above her knees. Additionally, Plaintiff was wearing 6 ½ inch heels. There were no hidden pockets anywhere on her dress and it would have been virtually impossible for Plaintiff to conceal any contraband anywhere on her person.

PLAINTIFF'S COMPLAINT FOR DAMAGES

included AREVALOS groping and massaging the outline of Plaintiff's breasts as he was allegedly looking for "contraband."   After slowly caressing the outline of Plaintiff's breasts, AREVALOS moved his hands down to around Plaintiff's waist and hips. After a few more seconds, AREVALOS took both hands and slowly worked his way to the front part of Plaintiff's body near her pubic region and eventually placed his right hand on top of Plaintiff's genitalia and specifically on top of her vagina. Plaintiff was shocked at AREVALOS' conduct and could do nothing but close her eyes and look away.  After about five to ten more seconds, AREVALOS removed his hands from Plaintiff's groin region and worked his way toward her backside where he started touching Plaintiff's buttocks in a sexually lewd and unwelcome fashion for at least five to ten seconds.

27.    This illegal search, seizure and sexual assault upon Plaintiff's person without her consent lasted somewhere between 45 seconds to a minute.  Despite the fact there were female officers on duty that evening that could have been called to arrive to the scene to perform the pat down, AREVALOS was not going to miss another opportunity to abuse his power and authority under color of law for his own demonic, personal self-gratification.

28.    AREVALOS continued to comment that he thought the scores were inaccurate and he wanted her friends to blow into the device as well.  Plaintiff asked why this was necessary since her friends were not driving.  AREVALOS disingenuously commented he wanted to make sure the device was working properly. He then placed Plaintiff, who was still in handcuffs, in the back seat of his squad car as he went to administer the breathalyzer test to Plaintiff's friends.

29.    After Plaintiff was secured in the back seat, AREVALOS approached Plaintiff's vehicle and proceeded to talk with Ms. Dominguez for some time before he had her blow into the breathalyzer. Ms. Dominguez blew a BAC of .22.  AREVALOS returned fifteen minutes after he had first secured Plaintiff and jokingly commented that her friend was in fact very intoxicated. AREVALOS then went back to Plaintiff's vehicle and spent more time talking to her friends.

8

Eventually, AREVALOS had her friends exit Plaintiff's vehicle and had them take a seat on the sidewalk in front of the McDonald's restaurant while they waited for another friend, Alex Pignato, to arrive and take possession of Plaintiff's vehicle and drive Ms. Dominguez and Ms. Shaw home. However, Ms. Dominguez' home was right across the street from where Plaintiff was detained and Ms. Shaw and Ms. Dominguez could have easily walked over there but AREVALOS did not want them to leave because he was most likely enjoying the opportunity to talk with two beautiful, young girls (both were 21 at that time) who were dressed somewhat provocatively.

30.    After Ms. Pignato arrived to drive Plaintiff's car to a secure location and then take the other two girls home, AREVALOS advised all three of Plaintiff's friend he was transporting Plaintiff to Los Colinas. At this point, Ms. Pignato inquired why AREVALOS was transporting her to Los Colinas in light of the fact Plaintiff had passed both the Field Sobriety Test and blew .06 BAC on two occasions.

31.    Despite passing the FST which AREVALOS acknowledged and scoring a .06 BAC twice, AREVALOS told Plaintiff and her friends that it was within his "discretion to take Plaintiff to Los Colinas" because "any BAC scores between .03 and.08 are within the police officer's discretion" as to whether or not to detain and arrest a suspected drunk driver.

32.    A full hour elapsed from the moment Plaintiff was initially stopped until AREVALOS took Plaintiff to the police station. During that hour, AREVALOS spent more than half the time talking to Plaintiff's friends while she sat handcuffed in the back seat of his squad car without being told she was under arrest or having received her Miranda rights.

33.    After they arrived at the downtown police station, AREVALOS parked his vehicle in the back corner of the parking lot far away from anyone else's vehicle or anywhere close to the entrance to the police station. He exited his vehicle to go inside the station but left Plaintiff handcuffed in the back seat of his car. He came out to check on Plaintiff on a few occasions but for

PLAINTIFF'S COMPLAINT FOR DAMAGES

some reason did not take her into the station for at least another 45 minutes after they first arrived there.

34.    When Plaintiff was finally taken out of the vehicle, AREVALOS asked Plaintiff if she needed to use the bathroom. Plaintiff, who had now been detained for almost two hours, told AREVALOS she did in fact need to use the restroom. Despite the fact other female officers were present and on duty, AREVALOS proceeded to follow Plaintiff into the bathroom, partially closed the door behind him and stood in the doorway looking directly at Plaintiff the entire time she was going to the bathroom. AREVALOS was standing no more than five feet from Plaintiff as she went to the bathroom and at one point, Plaintiff looked up and saw AREVALOS staring right at her.

35.    After Plaintiff came out of the bathroom, AREVALOS had her again blow into another breathalyzer and this time Plaintiff blew a BAC of .08. The test was administered at approximately 2:50 a.m. At this time, AREVALOS told Plaintiff he had no choice but to arrest her and that he had to take her to Los Colinas for booking. Plaintiff refused to acknowledge the score and asked for another test which also came back with a BAC of .08. Plaintiff also asked to have her blood drawn because she did not believe the accuracy of the test results and knew she was not even slightly intoxicated given the fact the last drink she had consumed was almost three hours prior to taking the breathalyzer tests at the police station.

36.    AREVALOS' misconduct continued for a several more hours during the ride to Los Colinas when he asked her numerous inappropriate personal questions including whether her "breasts were real or fake," and whether Plaintiff "lived alone" and "whether she had a boyfriend." Plaintiff just sat there quietly and did not respond to AREVALOS' questions or comments. Once she arrived at Los Colinas, Plaintiff was finally booked but AREVALOS stayed there with her and made additional inappropriate comments. Despite being arrested and finally booked, Plaintiff was never read her Miranda rights by AREVALOS or anyone else.

PLAINTIFF'S COMPLAINT FOR DAMAGES

## FIRST CAUSE OF ACTION

### VIOLATION OF CIVIL RIGHTS– 42 U.S.C. 1983

### (Against All Defendants and Does 1 through 20)

37.    Plaintiff restates and incorporates by reference each and every allegation contained in paragraphs 1 through 36, inclusive, as though fully set forth herein.

38.    This cause of action arises under 42 U.S.C. 1983 and the United States Constitution particularly under provisions of the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States.

39.    Each of the acts and/or omissions of Defendants alleged herein were conducted under the color of laws of the State of California and the County of San Diego. Further, the Defendants acted and claimed to act, under color of the law and pursuant to the instructions and policies of the City of San Diego and the SDPD and in the furtherance and within the scope of their duties as employees and/or agents of City of San Diego and the San Diego Police Department.

40.    By reason of the Defendants' conduct, Plaintiff was deprived of her rights, privileges, and immunities secured to her by the Constitution of the United States, State of California, and laws enacted thereunder in that the searches and seizures amounted to an arbitrary intrusion by Defendants into the security of Plaintiff's privacy and person, and were not authorized by law, and in that the contacts on Plaintiff's person, restriction of her movement, and damages to her person and possessions deprived Plaintiff of liberty and property without due process of law.

41.    As stated above, on April 30, 2010, Plaintiff was lawfully driving her vehicle along with two passengers when she was stopped and pulled over by Defendant AREVALOS for allegedly violating a traffic infraction. During what should have been a routine traffic stop after which Plaintiff should have been cited with no more than a ticket for an illegal lane change, AREVALOS took advantage of his authority and position over Plaintiff and subjected her to an unwelcomed display of lewd, inappropriate physical touching upon her person when he spent nearly a minute conducting a

11

PLAINTIFF'S COMPLAINT FOR DAMAGES

physical pat down of Plaintiff under the guise of searching for weapons and other contraband.

42.     This pat-down was inappropriate and sexual in nature and performed after Plaintiff had already been handcuffed and did not pose a threat to AREVALOS or any other individuals. Furthermore, given the fact Plaintiff was wearing a tight fitting, black mini-dress, it was virtually impossible for her to conceal anything on her person despite AREVALOS' repeated comments that, "Who knows what girls hide these days."

43.     During this over-intrusive and sexually charged pat down, AREVALOS physically assaulted Plaintiff in a sexually lewd and unwelcomed manner when he groped her including slowly caressing the outline of Plaintiff's breasts, placing his hands around Plaintiff's waist and hips, placing his hands near her pubic region and eventually on top of Plaintiff's genitalia and specifically on top of her vagina. AREVALOS eventually removed his hands from Plaintiff's groin region and worked his way toward her backside where he started touching Plaintiff's buttocks in a sexually lewd and unwelcome fashion.

44.     This illegal search, seizure and sexual assault upon Plaintiff's person without her consent lasted somewhere between 45 seconds to a minute.  Despite the fact there were female officers on duty that evening that could have arrived at the scene to conduct the pat down, AREVALOS was not going to miss another opportunity to abuse his power and authority under color of law for his own demonic, personal self-gratification. Furthermore, during this illegal and unwarranted pat-down, Plaintiff could feel AREVALOS' breathing on the back of her neck as he was standing only a few inches away from her during the entire time it took for him to complete the pat-down.

45.     Upon information and belief, even prior to Plaintiff's arrest, an as early as 2009, a detective within the SDPD received a complaint from a woman regarding inappropriate conduct carried out against her by AREVALOS during her DUI arrest. However, the detective failed to report or follow up on the women's complaint. On or about February 20, 2010, the San Diego District

12

Attorney's Office received its first complaint of sexual assault from a woman who had been stopped by AREVALOS for a DUI arrest and investigation. The San Diego District Attorney's Office investigated the complaint as a sexual penetration under color of authority but no charges were filed because a lack of evidence to prove the alleged crime beyond a reasonable doubt.

46.     Finally, in March 2011, after Plaintiff and several other women came forward and lodged complaints of sexual misconduct against AREVALOS while under color of authority, the Special Operations Division of the San Diego District Attorney's Office conducted an investigation into the activities of the AREVALOS, and determined there was probable cause to arrest AREVALOS.

47.     On March 11, 2011 AREVALOS was booked into jail on sexual battery, false imprisonment and assault under color of authority.  AREVALOS was eventually charged with 21 felony counts for harassing seven women, including Plaintiff, during traffic stops in the City of San Diego.  On or about November 7, 2011, AREVALOS was convicted of eight felony counts and four misdemeanors including bribing and sexually assaulting women he had stopped in the Gaslamp District for drunk driving and other offenses.  On February 10, 2012, AREVALOS was sentenced to eight years and eight months in prison, ordered to pay a $10,000 fine and ordered to register as a sex offender for life.

48.     During AREVALOS' criminal trial, Defendant Sergeant FRIEDMAN, who was AREVALOS' supervising officer, testified that traffic officers jokingly called AREVALOS the squad's "Los Colinas transport unit" because he arrested so many women on suspicion of drunk driving.  Furthermore, Sergeant FRIEDMAN testified that AREVALOS often bragged about the beauty of the women he pulled over and would throw their driver's licenses on the table in front of other officers including Sergeant FRIEDMAN.  Furthermore, Sergeant FRIEDMAN testified that he and other officers within the SDPD who worked with AREVALOS knew about the pattern and

unusually high number of women that AREVALOS arrested compared to other traffic officers within the SDPD. AREVALOS arrested an equal number of men and woman while the average officer arrested three men for every one woman.

49.     By reason of the Defendants' conduct, Plaintiffs was deprived of her rights, privileges, and immunities secured to by the Constitution of the United States, State of California, and laws enacted thereunder in that the search, detention and unlawful arrest amounted to an arbitrary intrusion by Defendants into the security of Plaintiff's privacy and person, and were not authorized by law, and in that the contacts on Plaintiff's person, restrictions of her movements, deprived Plaintiff of liberty and property without due process of law.

50.     As a proximate result of the acts and/or omissions of Defendants, and each of them, and their agents, servants, and/or employees, Plaintiff was hurt and injured in her body, health, strength, and activity, and person, all of which injuries have caused, and continue to cause Plaintiff great mental, physical, and nervous pain and suffering.  Plaintiff alleges that such injuries may result in permanent disability and ongoing physical discomfort to her body.  As a result of such injuries, Plaintiff has suffered general and special economic and non economic damages in an amount to be proven at the time of trial, and in excess of this court's minimum jurisdiction.

51.     As a proximate result of the acts or omissions of Defendants, and each of them, and their agents, servants, and/or employees, Plaintiff has incurred, and will continue to incur, medical and related expenses in an amount to be proven at the time of trial.

52.     Upon information and belief, the above-recited actions of Defendants, in depriving Plaintiff of her constitutionally protected rights, were done with evil motive or intent, or with reckless or callous indifference and in conscious disregard of Plaintiff's rights. Plaintiff is informed and believes, and based thereon allege that Defendants' actions, and those of their agents, servants and/or employees, as herein above alleged, constitute malicious, oppressive, fraudulent and despicable

PLAINTIFF'S COMPLAINT FOR DAMAGES

conduct and were done in conscious and wanton disregard of the rights of Plaintiff, and were ratified, condoned and approved by each of the Defendants. Plaintiff, therefore, is entitled to an award of punitive and exemplary damages from Defendants, and each of them, in an amount to be proven at the time of trial.

## SECOND CAUSE OF ACTION

## NEGLIGENT SUPERVISION, HIRING AND RETENTION

### (Against City of San Diego, San Diego Police Department and Does 10 through 20)

53.     Plaintiff restates and incorporates by reference each and every allegation contained in paragraphs 1 through 52, inclusive, as though fully set forth herein.

54.     At all times relevant hereto, Defendants City of San Diego and the San Diego Police Department possessed the power and authority to hire and fire their respective employees, including Defendant AREVALOS and Defendant FRIEDMAN.

55.     Defendants owed Plaintiff a duty of reasonable care in hiring, training, supervising, disciplining, and/or retaining their respective employees.

56.     Upon information and belief, Defendants violated Plaintiff's Constitutional Rights pursuant to its official policy or widespread custom, usage, and practice of reckless indifference in hiring, training, supervising, retaining, and disciplining its employee officers, and in conducting sham investigations of complaints of police misconduct.

57.     Defendants breached said duty by employing customs or policies that violated Plaintiff's federal constitutional right, namely the right under the Fourteenth Amendment to be free from state deprivation of liberty without due process of law. Defendants' unconstitutional practices resulted in the violation of Plaintiff's Fourth Amendment right to be secure in her person from unlawful arrest, unlawful police misconduct and unreasonable searches and seizures, which is incorporated into the Fourteenth Amendment of the Constitution at issue here. By violating Plaintiff's federal rights under the Fourth Amendment, Defendants thereby violated her right under the

15

Fourteenth Amendment, applicable to states via incorporation.

58.    Defendant AREVALOS unlawfully detained and held Plaintiff against her will without arresting her or admonishing her of her Miranda rights.  After Plaintiff was taken out of her vehicle for suspicion of driving under the influence, she passed not only the Field Sobriety Test which AREVALOS administered that Plaintiff passed, but Plaintiff also blew a .06 BAC into the hand held breathalyzer device on two occasions that AREVALOS administered to Plaintiff.

59.    At all relevant times, Defendants and each of them, and/or their agents/employees knew or reasonably should have known that the conduct and omissions set forth above violated Plaintiff's rights under federal and state law.

60.    At all relevant times, City of San Diego and the San Diego Police Department, and/or their agents/employees knew or reasonably should have known that unless they intervened to protect individuals like Plaintiff, and to adequately supervise, prohibit, control, regulate, discipline, and/or otherwise penalize the conduct of AREVALOS as set forth above, the remaining Defendants and employees would perceive the conduct and omissions as being ratified and condoned.

61.    As a proximate result of the wrongful acts of Defendants, and each of them, Plaintiff was humiliated, hurt and injured in her health, strength and activity, sustaining injuries to her body and person, which have caused, and will continue to cause, Plaintiff great physical, mental and emotional pain and suffering, all to her general damages in a sum which will be proven at trial. As a direct and proximate result of the foregoing, Plaintiff was required to, and did, and will in the future, employ health care practitioners to examine, treat and care for her, and will in the future incur medical and incidental expenses, including prejudgment interest.  As a result of said injuries, Plaintiff has suffered general and special economic and non-economic damages in an amount to be proven at the time of trial and in excess of this Court's minimum jurisdiction.

62.    Plaintiff repeats and incorporates herein paragraphs 1 through 61, as servants and/or

16

employees, as herein above alleged, constitute malicious, oppressive, fraudulent and despicable conduct and were done in conscious and wanton disregard of the rights of Plaintiff, and were ratified, condoned and approved by each of the Defendants. Plaintiff, therefore, is entitled to an award of punitive and exemplary damages from Defendants, and each of them, in an amount to be proven at the time of trial though fully set forth.

63.     Defendants, City of San Diego and the SDPD owed a duty to Plaintiff to supervise and regulate the conduct of its agents, servants and employees so as to prevent the dangerous practices they knew or should have known were likely to result in physical and/or emotional injuries to Plaintiff.

64.     As a result of Defendant AREVALOS, Defendant FRIEDMAN and Does 1 through 20's conduct herein alleged, said Defendants have breached their duty to Plaintiff.

### THIRD CAUSE OF ACTION
### ASSAULT AND BATTERY
**(Against Anthony Arevalos, City of San Diego, SDPD and Does 1 through 20)**

65.     Plaintiff restates and incorporates by reference each and every allegation contained in paragraphs 1 through 64, inclusive, as though fully set forth herein.

66.     In doing the acts described herein, AREVALOS intended to place Plaintiff in apprehension of an imminent offensive contact with her person and did in fact come into contact with Plaintiff's person without her consent when he groped her under and around her breasts, around her waist, on her pubic region, on her genitalia, on top of her vagina and her buttocks.

67.     As a result of AREVALOS' acts, Plaintiff, in fact, placed in great apprehension of imminent harmful and offensive contact with her person and was in fact touched and groped in a sexually lewd and unwanted manner by AREVALOS during her arrest.

68.     AREVALOS' conduct as described above, caused Plaintiff to be apprehensive that he would subject her to intentional invasions of her right to be free from offensive and harmful contact and demonstrated that at all times material herein, AREVALOS had a present ability to subject

17

Plaintiff to an intentional offensive and harmful touching and did in fact commit an offensive and harmful touching of Plaintiff's person.

69.     AREVALOS' conduct was malicious and oppressive, and done with a conscious disregard of Plaintiff's rights.  Defendants City of San Diego and the San Diego Police Department knew, or should have known, of the assault and battery, but ratified the conduct, as described herein above, by failing to adequately, or at all, supervise and/or discipline AREVALOS or conduct any investigation into AREVALOS' misconduct and behavior despite having knowledge of similar inappropriate conduct carried out by AREVALOS against other individuals.

70.     As a proximate result of the wrongful acts of Defendants, and each of them, Plaintiff was humiliated, hurt and injured in her health, strength and activity, sustaining injuries to her body and person, which have caused, and will continue to cause, Plaintiff great physical, mental and emotional pain and suffering, all to her general damages in a sum which will be proven at trial. As a direct and proximate result of the foregoing, Plaintiff was required to, and did, and will in the future, employ health care practitioners to examine, treat and care for her, and will in the future incur medical and incidental expenses, including prejudgment interest.  As a result of said injuries, Plaintiff has suffered general and special economic and non-economic damages in an amount to be proven at the time of trial and in excess of this Court's minimum jurisdiction.

71.     Upon information and belief, the above-recited actions of Defendants, in depriving Plaintiff of her constitutionally protected rights, were done with evil motive or intent, or with reckless or callous indifference and in conscious disregard of Plaintiff's rights.  Plaintiff is informed and believes, and based thereon alleges that Defendants' actions, and those of their agents, servants and/or employees, as herein above alleged, constitute malicious, oppressive, fraudulent and despicable conduct and were done in conscious and wanton disregard of the rights of Plaintiff, and were ratified, condoned and approved by each of the Defendants.  Plaintiff, therefore, is entitled to an award of

18

punitive and exemplary damages from Defendants, and each of them, in an amount to be proven at the time of trial.

**FOURTH CAUSE OF ACTION**

**UNLAWFUL ARREST AND DETENTION**

**(Against All Defendants and Does 1 through 20)**

72.     Plaintiff restates and incorporates by reference each and every allegation contained in paragraphs 1 through 71, inclusive, as though fully set forth herein.

73.     Defendants, at all times relevant herein, were employed by the City of San Diego and the SDPD and, in doing the acts described herein, were acting under the color and/or authority of the City of San Diego and the SDPD and in the furtherance and within the scope of their duties as employees and/or agents of City of San Diego and the SDPD.

74.     Commencing on or about April 30, 2010, Defendants forcibly and against Plaintiff's will, unlawfully falsely arrested Plaintiff, without lawful privilege, prohibiting and preventing her from leaving.  Plaintiff contends she did not violate any traffic laws that evening and that AREVALOS fabricated this charge to justify the wrongful detention, illegal search and unlawful arrest of Plaintiff.

75.     Plaintiff was handcuffed by AREVALOS despite having passed the Field Sobriety Test and blowing a BAC of .06 twice on the hand held breathalyzer device AREVALOS administered to Plaintiff at the scene of her detention.  Even after placing her in cuffs which was followed by an otherwise illegal and repulsive pat down of Plaintiff's person, AREVALOS never admonished Plaintiff of her Miranda rights even after she was booked and processed at Los Colinas.

76.     Defendant AREVALOS, without a warrant and without probable cause or even reasonable suspicion, illegally searched and arrested Plaintiff in violation of Plaintiff's federal rights, namely the right under the Fourteenth Amendment to be free from state deprivation of liberty without due process of law. By subjecting Plaintiff to such unlawful arrest, seizure and detention, Defendants,

19

working under the color of state law, violated her Fourth Amendment right to be secure in her person from unreasonable searches and seizures, which is incorporated into the Fourteenth Amendment at issue here. By violating Plaintiff's federal right under the Fourth Amendment, Defendants thereby violated her right under the Fourteenth Amendment, applicable to states via incorporation.

77.     Defendant AREVALOS detained, searched, arrested and imprisoned Plaintiff without probable cause or reasonable suspicion, as there was no evidence that Plaintiff was partaking in any criminal activity when AREVALOS initially pulled her over for allegedly violating a minor traffic infraction. This unlawful search and seizure was done in violation of Plaintiff's Fourth Amendment rights as incorporated by the Due Process Clause of the Fourteenth Amendment. As the facts above demonstrate, AREVALOS pulled Plaintiff over to simply nourish his sexually deviant appetite which he also carried out against dozens of women in the City of San Diego over a number of years which ultimately led to his criminal conviction and a sentence of eight plus years in State prison.

78.     By subjecting Plaintiff to such unlawful arrest and detention, Defendants, working under the color of state law, violated his Fourth Amendment right to be secure in his person from unreasonable searches and seizures, which is incorporated into the Fourteenth Amendment at issue here. By violating Plaintiff's federal right under the Fourth Amendment, Defendants thereby violated his right under the Fourteenth Amendment, applicable to states via incorporation.

79.     Defendants AREVALOS handcuffed and booked Plaintiff without probable cause or reasonable suspicion, as the search leading up to said arrest was without probable cause or reasonable suspicion, as discussed above. Defendant AREVALOS' unreasonable seizure was also done in violation of the Plaintiff's Fourth Amendment rights as incorporated by the Due Process Clause of the Fourteenth Amendment.

80.     Plaintiff was consequently unlawfully arrested and charged with driving while intoxicated.

PLAINTIFF'S COMPLAINT FOR DAMAGES

81.     Defendants arrested and detained Plaintiff for the purpose of attempting to cover up AREVALOS' unlawful and illegal conduct, and abused their inherent powers as law enforcement officers.

82.     Defendants authorized, encouraged, directed, co-conspired, or assisted one another in the unlawful arrest alleged herein.

83.     As a proximate result of the acts and/or omissions of Defendants, and each of them, and their agents, servants, and/or employees, Plaintiff was hurt and injured in her body, health, strength, and activity, and person, all of which injuries have caused, and continue to cause Plaintiff great mental, physical, and nervous pain and suffering.  Plaintiff alleges that such injuries may result in permanent disability and ongoing physical discomfort to her body.  As a result of such injuries, Plaintiff has suffered general and special economic and non economic damages in an amount to be proven at the time of trial, and in excess of this court's minimum jurisdiction.

84.     As a proximate result of the acts or omissions of Defendants, and each of them, and their agents, servants, and/or employees, Plaintiff has incurred, and will continue to incur, medical and related expenses in an amount to be proven at the time of trial.

85.     Upon information and belief, the above-recited actions of Defendants, in depriving Plaintiff of her constitutionally protected rights, were done with evil motive or intent, or with reckless or callous indifference and in conscious disregard of Plaintiff's rights. Plaintiff is informed and believes, and based thereon allege that Defendants' actions, and those of their agents, servants and/or employees, as herein above alleged, constitute malicious, oppressive, fraudulent and despicable conduct and were done in conscious and wanton disregard of the rights of Plaintiff, and were ratified, condoned and approved by each of the Defendants. Plaintiff, therefore, is entitled to an award of punitive and exemplary damages from Defendants, and each of them, in an amount to be proven at the time of trial.

PLAINTIFF'S COMPLAINT FOR DAMAGES

## FIFTH CAUSE OF ACTION

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Against All Defendants and Does 1 through 20)

86.     Plaintiff restates and incorporates by reference each and every allegation contained in paragraphs 1 through 85, inclusive, as though fully set forth herein.

87.     Upon information and belief, and based thereon, it is alleged that Defendants, City of San Diego, SDPD, and officers Anthony Arevalos and Sergeant Kevin Friedman and other unidentified SDPD officers, purposely, deliberately and intentionally each carried out the aforesaid acts pleaded above, and purposely caused Plaintiff to suffer extreme and severe humiliation, emotional distress, mental distress, physical pain and discomfort.

88.     Plaintiff is informed and believes, and based thereon alleges, that Defendants' City of San Diego, SDPD, and SDPD officers Anthony Arevalos, Sergeant Kevin Friedman and other unidentified SDPD officers' actions and conduct, as described above, were outrageous and so extreme that it exceeded all bounds of that usually tolerated in a civilized society.

89.     By abusing their position of authority under color of law, Defendants engaged in conduct intended to humiliate, upset, despair, worry and distress Plaintiff.  Defendants' conduct, as alleged herein, was, therefore, extreme, outrageous and of the sort not tolerated by a civilized society.

90.     As a result of Defendants' intentional misconduct, Plaintiff has suffered and continues to humiliation, emotional distress, mental distress, physical pain and discomfort, depression, anxiety and physical pain and discomfort.  Plaintiff is informed and believes and thereon alleges that she will continue to experience said pain and emotional and physical suffering for a period in the future she cannot presently ascertain, all in an amount subject to proof at the time of trial.

91.     At all times relevant herein Defendants City of San Diego and San Diego Police Department authorized, ratified and had actual or constructive knowledge of the conduct described above.

22

92.    Defendants, and each of them, have committed the acts alleged herein willfully, maliciously and oppressively with the wrongful intention of injuring Plaintiff. Defendants further acted with an improper and intentional motive amounting to malice, and in conscious disregard of Plaintiff's civil rights. As a result of Defendants' conduct, Plaintiff is entitled to recover punitive damages from Defendants, and each of them, in an amount according to proof.

WHEREFORE, Plaintiff prays for Judgment against Defendants, jointly and severally, as follows:

### AS TO THE FIRST CAUSE OF ACTION:

1.    For general damages in an amount to be determined at trial;

2.    For special damages in an amount to be determined at trial; and

3.    For punitive damages in an amount to be determined at trial.

### AS TO THE SECOND CAUSE OF ACTION:

1.    For general damages in an amount to be determined at trial;

2.    For special damages in an amount to be determined at trial.

### AS TO THE THIRD CAUSE OF ACTION:

1.    For general damages in an amount to be determined at trial;

2.    For special damages in an amount to be determined at trial; and

3.    For punitive damages in an amount to be determined at trial

### AS TO THE FOURTH CAUSE OF ACTION:

1.    For general damages in an amount to be determined at trial;

2.    For special damages in an amount to be determined at trial; and

3.    For punitive damages in an amount to be determined at trial.

### AS TO THE FIFTH CAUSE OF ACTION:

1.    For general damages in an amount to be determined at trial;

PLAINTIFF'S COMPLAINT FOR DAMAGES

2.      For special damages in an amount to be determined at trial; and

3.      For punitive damages in an amount to be determined at trial.

### AS TO ALL OF THE CAUSES OF ACTION:

1.      For pre-judgment interest;

2.      For costs of suit herein incurred; and

3.      For attorney's fees where applicable; and, such further relief as the Court may deem just and proper.


DATED: April 24, 2012                            NATANZI LAW GROUP, INC.


By: _____
O. DAVID NATANZI
Attorneys for Plaintiff
ASHLEY NIKOLE STEELE

PLAINTIFF'S COMPLAINT FOR DAMAGES

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Steele, Ashley N.

## DEFENDANTS

San Diego Police Department; City of San Diego; SDPD Officer Anthony Arevalos; SDPD Sergeant Kevin Friedman ⊞

**(b)** County of Residence of First Listed Plaintiff   Orange County
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   San Diego County
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

"See attachment"

Attorneys (If Known)

**'12CV1012 DMS WMC**

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☐ 1   U.S. Government Plaintiff

☒ 3   Federal Question
(U.S. Government Not a Party)

☐ 2   U.S. Government Defendant

☐ 4   Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☒ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN   (Place an "X" in One Box Only)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing **(Do not cite jurisdictional statutes unless diversity):**
42 U.S.C. 1983

Brief description of cause:
Plaintiff was falsely detained, arrested & during detention was sexually assaulted by Anthony Arevalos.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $** 2,500,000.00

CHECK YES only if demanded in complaint:

**JURY DEMAND:**  ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE
04/24/2012

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## ATTACHMENT TO CIVIL COVER SHEET JS 44

LAW OFFICES OF SANFORD M. PASSMAN

Sanford M. Passman, Esq., SBN 77701

6303 Wilshire Boulevard, Suite 207

Los Angeles, CA 90048

Phone: (323) 852-1883

Facsimile: (323) 852-1899

sandypassman@ca.rr.com


NATANZI LAW GROUP, INC.

O. David Natanzi, Esq., SBN 199983

9911 West Pico Boulevard, Suite 1010

Los Angeles, California 90035

Telephone: (310) 201-4999

Facsimile:  (310) 201-5999

david@nlginc.com